S. P. S. CONSULTANTS, INC., and all others similarly situated, Plaintiffs,

v.

Louis J. LEFKOWITZ, Attorney General of the State of New York, Frank S. Hogan, District Attorney of New York County, Defendants.

Martin S. MITCHELL et al., Plaintiffs,

v.

Louis J. LEFKOWITZ, Attorney General of New York, et al., Defendants.

Nos. 71 Civ. 2931, 71 Civ. 2990.

United States District Court,
S. D. New York.

July 8, 1971.

See also 333 F.Supp. 1373.

Kimmelman, Sexter & Sobel, New York City, for plaintiffs S. P. S. Consultants, Inc., and others; Arthur H. Sobel, Kenneth Rome, Arthur Levine, Roy Lucas, Peter Szabadi, New York City, of counsel.

Richard E. Pollinger, New York City, for plaintiffs Martin S. Mitchell and others; Roy Lucas, New York City, of counsel.

Louis J. Lefkowitz, Atty. Gen., of the State of New York by Mark Walsh, Asst. Atty. Gen., New York City, for defendants.

## MEMORANDUM

BONSAL, District Judge.

In these companion actions plaintiffs seek the convening of a Three-Judge Court pursuant to 28 U.S.C. §§ 2281, 2284, and for a temporary restraining order pending decision by the Three-Judge Court. Plaintiffs S. P. S. Consultants, Inc. ("SPS") and Mitchell Re-

ferral Service, Inc. ("Mitchell") are corporations organized for profit, having as their purpose the dissemination of information as to the availability of abortions in the State of New York. Their services include dissemination of information as to the availability of facilities, the making of travel arrangements for patients referred to them by out of state doctors, and arrangements to have the abortions performed by licensed physicians in medical facilities within this State. Plaintiff Mitchell is the president of Mitchell, and plaintiff Sandra King is a patient who recently availed herself of the services of Mitchell. Both SPS and Mitchell were organized after the enactment of the 1970 New York Abortion Law.

SPS charges a fee of $75 for its service of arranging travel and hotel accommodations and an appointment at an abortion facility for an out-of-state resident seeking an abortion. In addition, SPS provides its clients with information concerning probable expenses and the availability of facilities. Mitchell offers essentially the same services as SPS; however, its clients are assured a set price of $300 for the abortion. Mitchell's fee, which varies according to the type of abortion involved, is included in the set price of $300. Both SPS and Mitchell advertise their services—SPS by direct mail and Mitchell through newspapers and television.

Plaintiffs attack the constitutionality of the new Article 44 of the New York Public Health Law, McKinney's Consol. Laws, c. 45 which was recently enacted by the New York Legislature and approved by the Governor on June 25, 1971. Article 44 became effective on July 1, 1971 in accordance with paragraph 2 of Section 4403, which provides:

"§ 2. This act shall take effect on the first day of July next succeeding the date on which it shall have become a law."

Section 4400, entitled "Legislative findings and statement of policy" reads as follows:

"The security of the health and welfare of the residents of this state requires, that the utmost attention be given to assure that persons seeking medical care and treatment in this state receive adequate care rendered within the standards of ethics and public policy applicable to all practices of medicine. Medical referral services, organized as profit making enterprises within this state, have been found to be engaged in the practice of medicine, have been sharing fees received for referrals with doctors and hospitals to whom patients are referred, have been otherwise compensating doctors and hospitals for accepting patients referred to them, have been giving medical advice by telephone to persons seeking referrals and have been advertising their services, all in violation of the standards of ethics and public policy applicable to the practice of medicine and which would be violations of standards of professional conduct if the acts were performed by physicians. Such profit making referral services have consistently engaged in practices inimical to the public interest which would be prohibited to physicians and have engaged in relationships with physicians which are in violation of the laws and public policy of this state and which have permitted physicians to benefit indirectly from acts and practices which would be prohibited to them directly. It is hereby declared to be the public policy of this state that the public health, safety and welfare of the citizens of this state require that such profit making medical referral service organizations be declared to be invalid and unlawful in this state."

Section 4401, the constitutionality of which is attacked by the plaintiffs, provides as follows:

"§ 4401. Medical referral service businesses prohibited. 1. No person, firm, partnership, association or corporation, or agent or employee thereof, shall engage in for profit any busi-

ness or service which in whole or in part includes the referral or recommendation of persons to a physician, hospital, health related facility, or dispensary for any form of medical care or treatment of any ailment or physical condition. The imposition of a fee or charge for any such referral or recommendation shall create a presumption that the business or service is engaged in for profit.

"2. No physician, hospital, health related facility or dispensary shall enter into a contract or other form of agreement to accept for medical care or treatment any person referred or recommended for such care or treatment by a medical referral service business located in or doing business in another state if the medical referral service business would be prohibited under this section if the business were located in or doing business in this state."

Section 4402 provides that a violation of the statute shall constitute a misdemeanor punishable by imprisonment of not more than one year or a fine of not more than $5,000, or both, and authorizes the Attorney General to institute proceedings to enjoin any violation of the statute.

In contending that the statute is unconstitutional, plaintiffs pose the following questions:

"I. Whether N. Y. Public Health Law, art. 44, violates the First Amendment right to disseminate information concerning the availability of health care facilities, and in particular, hospitals and clinics which provide low-cost therapeutic and elective abortion procedures in New York.

"II. Whether the statute abridges the First Amendment right of women, physicians, and the public to receive such information without the inhibition of sweeping prohibitions on a major source of the information.

"III. Whether the statute abridges the right of a woman to have access to elective abortion, as guaranteed by the First, Fourth, Ninth, and Fourteenth Amendments, and recognized by numerous federal and state court decisions, without the inhibition of prohibitory legislation thwarting access to necessary information.

"IV. Whether the statute abridges rights guaranteed by the equal protection clause of the Fourteenth Amendment, of individuals and organizations operating for profit, to communicate, and of recipients to pay for, information protected by the First Amendment, where identical information may lawfully be disseminated by fee-charging organizations which operate not-for-profit.

"V. Whether the statute abridges the right to travel interstate for a lawful purpose, without being impeded by arbitrary restrictions on information necessary to effectuate the purpose of such travel.

"VI. Whether the statute violates the commerce clause Article I, § 8 of the federal constitution, by imposing an arbitrary prohibition upon the flow of information across state lines."

At the hearing on their application, plaintiffs contended that the effect of the new statute is to drive them out of business in violation of their constitutional rights. The defendants have filed no papers in opposition. However, at the hearing, Mark Walsh, Esq., from the office of the defendant Attorney General of New York, appeared on behalf of the defendants and in opposition to plaintiffs' application. He contended that the statute does not preclude the plaintiffs from disseminating information as to doctors and medical facilities available for the performing of abortions and of charging a fee for their services. Defendants contend that it only prohibits plaintiffs from setting themselves up as referral services and bringing together particular patients with particular doctors or medical facilities, as this violates the well-established public policy of New York forbidding laymen from acting as intermediaries between patient

and doctor for a fee. The evils of such referral services have been described in detail in State of New York v. Abortion Information Agency, Inc., 323 N.Y.S.2d 597 (Sup.Ct., N.Y.Co., Asch, J., 1971), aff'd (1st Dept. June 1971) (Steuer, J. dissenting), motion for leave to appeal to Court of Appeals pending; State of New York v. Mitchell and Mitchell Referral Services, Inc. (two of the plaintiffs in the pending application), 66 Misc.2d 514, 321 N.Y.S.2d 756 (Sup.Ct., Niagara Co., Stiller, J., 1971).

In view of the concession by the defendants that the statute does not prohibit plaintiffs from disseminating information for a fee, plaintiffs may have difficulty in proving that their First Amendment rights are abridged.

However, plaintiffs point out that the statute is limited in application to persons engaged in the referral business for a profit and does not prohibit similar activities being carried out by non-profit organizations. Plaintiffs assert that Planned Parenthood, Inc. and other non-profit groups act as referral services from patient to doctor or medical facility and can continue to do so without the prohibition of the statute. This, plaintiffs contend, violates their rights under the Fourteenth Amendment to the United States Constitution, which provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."

■ The statement of policy set forth in Section 4400 of the statute opens with the following sentence:

> "The security of the health and welfare of the residents of this state requires, that the utmost attention be given to assure that persons seeking medical care and treatment in this state receive adequate care rendered within the standards of ethics and public policy applicable to all practices of medicine."

Such a statement of policy raises an issue as to why non-profit organizations should not be subject to the same strict standards as are others who seek to set up medical referral services. Therefore, plaintiffs' Fourteenth Amendment claim appears to be of sufficient substance to require consideration of plaintiffs' claims by a Three-Judge Court, and plaintiffs' applications to this extent are granted and a Three-Judge Court will be convened as soon as practicable.

■ It appears that plaintiffs may continue to provide information for a fee, and are only prohibited from carrying on a referral service prohibited by the statute. Moreover, the public policy of the State of New York in seeking to protect the integrity of its medical services is not to be disregarded lightly. For these reasons, plaintiffs' application for a temporary restraining order is denied, without prejudice to plaintiffs seeking a preliminary injunction before the Three-Judge Court.

It is so ordered.